UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LOCALS 302 AND 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS CONSTRUCTION INDUSTRY HEALTH AND SECURITY FUND, et al. | CASE NO. C22-0799JLR<br><br>ORDER |
| Plaintiffs, | |
| v. | |
| FENIX EARTHWORKS LLC, | |
| Defendant. | |

## I.    INTRODUCTION

Before the court are three motions:  (1) a motion for default judgment filed by Plaintiffs the Boards of Trustees of the Locals 302 and 612 of the International Union of Operating Engineers Construction Industry Health and Security Fund ("Health Trust"),

1   Locals 302 and 612 of the International Union of Operating Engineers-Employers

2   Construction Industry Retirement Fund, and Western Washington Operating Engineers-

3   Employers Training Trust Fund (collectively, the "Trust Funds") (Def. J. Mot. (Dkt. # 9);

4   Def. J. Reply (Dkt. # 19)); (2) Defendant Fenix Earthworks LLC's ("Fenix") motion to

5   vacate the court's August 8, 2022 entry of default against it (Vac. Mot. (Dkt. # 12); Vac.

6   Reply (Dkt. # 18); *see* Entry of Default (Dkt. # 8)); and (3) Fenix's motion for leave to

7   file an answer to the Trust Funds' complaint (Ans. Mot (Dkt. # 14)).  Fenix opposes the

8   Trust Funds' motion for default judgment.  (Def. J. Resp. (Dkt. # 15).)  The Trust Funds

9   oppose Fenix's motion to vacate the entry of default (Vac. Resp. (Dkt. # 16)) and have

10  not responded to Fenix's motion for leave to file an answer.  The court has considered the

11  motions, all materials submitted in support of and in opposition to the motions, and the

12  governing law.  Being fully advised,[1] the court GRANTS Fenix's motions to vacate the

13  entry of default and for leave to file an answer and DENIES the Trust Funds' motion for

14  default judgment.

15                    **II.    BACKGROUND**

16      The Trust Funds are joint labor-management funds created pursuant to Section

17  302(c) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c), and the

18  Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*.

19

20      [1] The Trust Funds have not requested oral argument on the motions (*see* Def. J. Mot. at 1;
    Vac. Resp. at 1); Fenix has not requested oral argument on its motion for leave to file an answer
21  (see Ans. Mot. at 1); and the court previously denied Fenix's separate request for oral argument
    for failure to follow the court's local rules (*see* 11/3/22 Order (Dkt. # 21)).  In any event, the
22  court concludes that oral argument would not be helpful to its disposition of the motions.  *See*
    Local Rules W.D. Wash. LCR 7(b)(4).

1   (Compl. (Dkt. # 1) ¶ 2.)  They are funded by employer contributions made on behalf of

2   employees who are covered by the collective bargaining agreement ("CBA") between the

3   Independent Contractors of Washington and Local 302 of the International Union of

4   Operating Engineers ("Local 302").  (Kepner Decl. (Dkt. # 10) ¶ 6; *see also id.* ¶ 8, Ex. A

5   ("2018-2021 Local 302 CBA").)  Fenix executed a Compliance Agreement binding it to

6   the terms of the Local 302 CBA on July 17, 2017.  (*Id.* ¶ 9, Ex. B ("Fenix Compliance

7   Agreement").)  The contribution rate is set by the Local 302 CBA and is generally paid

8   on an employee's behalf on a dollars per hour worked basis.  (*Id.* ¶ 6; *see also* 2018-2021

9   Local 302 CBA, Schedule A, at 24[2] (setting forth the contribution rates); *id.* Schedule B,

10  at 30-31 (describing the benefit plans and trust fund contributions).)  The specific terms

11  of the Trust Funds are set forth in trust agreements that are incorporated by reference into

12  the Local 302 CBA.  (Kepner Decl. ¶¶ 18-22, Exs. E-G (trust agreements).)  The Trust

13  Funds are not parties to the Local 302 CBA.  (*Id.* ¶ 6; *see* 2018-2021 Local 302 CBA.)

14      According to the Trust Funds, Fenix failed to timely pay trust fund contributions

15  for its employees owed pursuant to the Local 302 CBA and the trust agreements

16  incorporated therein between August 2021 and May 2022.  (Kepner Decl. ¶¶  2-15; *see*

17  *also id.* ¶ 13, Ex. C (August 2021-May 2022 remitttance reports[3]); *id.* ¶ 14, Ex. D

18

19

20  [2] The court cites to the CM/ECF page numbers in the document headers when referring to the parties' exhibits.

21  [3] Many of the remittance reports appear to indicate that the funds were owed pursuant to a contribution rate agreement that applies to Local 612 of the International Union of Operating Engineers ("Local 612"), rather than a Local 302 rate agreement.  (*See, e.g.*, *id.* at 60 (including entries for "612 DUES and 612 U P").)

1    (summary report, calculating $318,546.82 in unpaid contributions owed between August

2    2021 and March 2022).)  Additionally, Fenix also neither submitted remittance reports

3    nor made contribution payments between June 2022 and October 2022.  (*Id.* ¶ 16.)

4         On April 7, 2022, Noelle Dwarzski, counsel for the Trust Funds, emailed a letter

5    to George Juhl, a member of Fenix.  (Juhl Decl. (Dkt. # 12-1) ¶¶ 2, 5; *id.* ¶ 5, Ex. A

6    ("Email Correspondence") at 19-20.[4])  In emails on April 7 and 11, 2022, Mr. Juhl

7    informed Ms. Dwarzski that he was "looking forward to getting this taken care of" and

8    that Fenix would resume making payments toward the amount it owed for contributions

9    after it received certain retention checks and payments for assets sold.  (Email

10   Correspondence at 18-19.)  Ms. Dwarzski, Mr. Juhl, and staff from both Ms. Dwarzski's

11   law firm and Fenix continued to correspond about missing remittance reports and the

12   delinquent contributions owed.  (*Id.* at 11-18.)  On May 5, 2022, Ms. Dwarzski's legal

13   assistant informed Mr. Juhl that the Trust Funds would proceed with filing suit to collect

14   the delinquent contributions if Mr. Juhl did not send the missing remittance reports by

15   May 9, 2022.  (*Id.* at 15.)  Fenix sent the reports by May 10, 2022; accordingly, the Trust

16   Funds did not file suit at that time.  (*Id.* at 12-13; *see generally* Dkt.)

17        On May 18, 2022, Ms. Dwarzski's legal assistant sent Mr. Juhl a summary of the

18   amounts owed and a draft installment payment plan.  (10/24/22 Dwarzski Decl. (Dkt.

19   # 17) ¶ 7, Ex. C at 20-21.)  On May 26, 2022, Ms. Dwarzski emailed a letter to Mr. Juhl

20   in which she summarized the amounts owed and asked whether Fenix could pay $20,000

21

22        _____
          [4] Ms. Dwarzski's April 7, 2022 letter is not in the record before the court.

1  per month toward its delinquent contributions. (*Id.* at 22.) She stated that if Fenix did

2  not make certain payments by June 15, 2022, the Trust Funds would "file suit to collect

3  all amounts owing in accordance with the terms of the Trust Agreements." (*Id.*)

4  Although Ms. Dwarzski had set a June 15, 2022 deadline, the Trust Funds filed

5  this lawsuit on June 8, 2022, alleging an ERISA claim for delinquent contributions

6  arising from the Local 302 CBA and the trust agreements incorporated therein, along

7  with liquidated damages, interest, reasonable attorney's fees, and costs and expenses.

8  (*See generally* Compl.) The Trust Funds' complaint does not allege a claim arising from

9  a CBA between the Independent Contractors of Washington and Local 612. (*See*

10 *generally id.*) The Trust Funds served Fenix with the summons and complaint on June

11 17, 2022. (Aff. of Service (Dkt. # 4); Juhl Decl. ¶ 9.) Accordingly, Fenix's answer to the

12 Trust Funds' complaint was due 21 days later, on July 8, 2022. *See* Fed. R. Civ. P.

13 12(a)(1)(A). Fenix did not, however, file an answer before that deadline. (*See generally*

14 Dkt.)

15 In July and August 2022, Mr. Juhl and Ms. Dwarzski continued to exchange

16 emails about Fenix's delinquent contributions and the possibility of entering into a

17 payment plan. (Juhl Decl. ¶ 10; *see* Email Correspondence at 8-10.) On July 8, 2022,

18 Mr. Juhl emailed Ms. Dwarzski that Fenix had sent its delinquent contributions payment

19 for April 2022. (Email Correspondence at 8.) According to Ms. Dwarzski, however, the

20 Trust Funds had not yet received that payment as of July 15, 2022. (*Id.* at 8 (stating that

21 "[t]he trustees are unwilling to work with contractors that state they have paid but have

22 not").) Nevertheless, on July 28, 2022, Ms. Dwarzski emailed to Mr. Juhl a settlement

proposal and payment plan.  (10/27/22 Dwarzski Decl. (Dkt. # 20) ¶ 4, Ex. B.)  On July

29, 2022, she informed Mr. Juhl that if she did not hear from him "next week with a

feasible plan," the Trust Funds would "move forward with the litigation."  (*Id.*)  On

August 1, 2022, Mr. Juhl responded that he expected that Fenix's financial situation

would be "looking much better" soon and that Fenix would send the delinquent June

contribution that same week.  (10/24/22 Dwarzski Decl. ¶ 9, Ex. E.)  Fenix did not,

however, send the June payment, and it did not accept the offered payment plan.  (*Id.*

¶¶ 9-11.)

On August 19, 2022, the Trust Funds moved for entry of default because Fenix

still had not answered the complaint or otherwise appeared in this action.  (Def. Mot.

(Dkt. # 5).)  On August 22, 2022, the Clerk entered default against Fenix.  (Entry of

Default.)

Attorney Andrew M. Wagley appeared in this action on behalf of Fenix on

October 5, 2022.  (10/5/22 Not. (Dkt. # 8).)  One week later, on October 12, 2022, the

Trust Funds filed their motion for default judgment.  (Def. J. Mot.)  Fenix filed its motion

to vacate the entry of default on October 13, 2022, and its motion for leave to file an

answer to the Trust Funds' complaint on October 21, 2022.  (Vac. Mot.; Ans. Mot.)

### III.   ANALYSIS

Federal Rule of Civil Procedure 55 requires a "two-step process" for entering

default judgment, consisting of (1) the clerk's entry of default, and (2) a motion for entry

of default judgment.  *Symantec Corp. v. Global Impact, Inc.*, 559 F.3d 922, 923 (9th Cir.

2009); *see also* Fed. R. Civ. P. 55; Local Rules W.D. Wash. LCR 55(b)(1) ("No motion

1    for judgment by default should be entered against any party unless the court has

2    previously granted a motion for default against that party pursuant to LCR 55(a) or unless

3    default otherwise has been entered.").

4        The court may set aside an entry of default for good cause.  Fed. R. Civ. P. 55(c).

5    The court considers three factors to determine if good cause exists to set aside an entry of

6    default:  (1) whether the movant engaged in "culpable" conduct; (2) whether a

7    meritorious defense exists; and (3) whether setting aside the default would prejudice the

8    other party.  *See United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615

9    F.3d 1085, 1091 (9th Cir. 2010).  The party seeking to vacate an entry of default bears the

10   burden of demonstrating that these factors favor vacating the default.  *See TCI Grp. Life*

11   *Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), *overruled on other grounds by*

12   *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).  The Ninth Circuit Court of

13   Appeals has warned that "default judgments are ordinarily disfavored" and that [c]ases

14   should be decided upon their merits whenever reasonably possible."  *New Gen, LLC v.*

15   *Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel v. McCool*, 782 F.2d

16   1470, 1472 (9th Cir. 1986)).  Indeed, "judgment by default is a drastic step appropriate

17   only in extreme circumstances."  *Signed Pers. Check No. 730 of Mesle*, 615 F.3d at 1091

18   (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).  The court considers each of

19   the three "good cause" factors in turn and concludes that there exists good cause to vacate

20   the entry of default against Fenix.

21

22

## A.   Culpable Conduct

"[A] defendant's conduct is culpable if [it] has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Grp.*, 244 F.3d at 697 (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (emphasis in *TCI Grp.*)).  The Ninth Circuit explains that "in this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Signed Pers. Check No. 730 of Mesle*, 615 F.3d at 1092 (quoting *TCI Grp.*, 244 F.3d at 697).  A defendant's conduct is culpable "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* (citing *TCI Grp.*, 244 F.3d at 698).  For example, courts have found parties culpable where their conduct is "calculated to help them retain property in their possession, and avoid liability by staying out of court:  for instance, when companies act to avoid service in order to thwart their customers' attempts to bring suit against them." *Id.* at 1093-94 (citing *TCI Grp.*, 244 F.3d at 698-99).  "Simple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default." *Id.* at 1092-93 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 388 (1993)).

1    Here, Mr. Juhl remained in contact with Ms. Dwarzski via email until at least

2    August 2022, acknowledged that Fenix owed substantial delinquent contributions to the

3    Trust Funds, and expressed that Fenix wanted to resolve the matter but was waiting to

4    receive funds from the sale of assets and from retention checks before it could make its

5    payments.  (*See generally* Email Correspondence; *see also* Juhl Decl. ¶ 13 (asserting that

6    Fenix did not intentionally delay the lawsuit but instead "fully intended to attempt to

7    negotiate a settlement, or if not possible, to defend the lawsuit in court").)  Further,

8    counsel for Fenix appeared before the Trust Funds filed their motion for default judgment

9    and is defending Fenix in this action.  (*See generally* 10/5/22 Not.; Vac. Mot.; Ans. Mot.;

10   Def. J. Resp.)  The court cannot conclude on the record before it that "there is no

11   explanation of the default inconsistent with a devious, deliberate, willful, or bad faith

12   failure to respond" or that Fenix was otherwise attempting to take advantage of the Trust

13   Funds.  *Signed Pers. Check No. 730 of Mesle*, 615 F.3d at 1092.  Accordingly, the court

14   finds that this factor favors vacating the order of default.

15   **B.    Meritorious Defense**

16   A defendant seeking to vacate an entry of default "must present specific facts that

17   would constitute a defense."  *Signed Pers. Check No. 730 of Mesle*, 615 F.3d at 1094

18   (quoting *TCI Grp.*, 244 F.3d at 700).  This burden, however, "is not extraordinarily

19   heavy."  *Id.* (quoting *TCI Grp.*, 244 F.3d at 700).  "All that is necessary to satisfy the

20   'meritorious defense' requirement is to allege sufficient facts that, if true, would

21   constitute a defense: 'the question whether the factual allegation [i]s true' is not to be

22   determined by the court when it decides the motion to set aside the default."  *Id.* (quoting

1   *TCI Grp.*, 244 F.3d at 700).  "Rather, that question 'would be the subject of the later

2   litigation.'"  *Id.* (quoting *TCI Grp.*, 244 F.3d at 700).

3       Fenix suggests that it has a meritorious defense that under Article 11 of the Local

4   302 CBA, the present dispute should be resolved in mediation and/or arbitration.  (Vac.

5   Mot. at 8-9 (citing 2018-2021 Local 302 CBA at 15-16).)  It also points out that it has

6   asserted affirmative defenses in its proposed answer that it should be "allowed to explore

7   during the merits of this litigation."  (Vac. Reply at 9 (citing Prop. Ans. (Dkt. # 14-1).)

8       The Trust Funds assert that because they are not parties to the Local 302 CBA,

9   Article 11 does not apply and they cannot be required to submit to the dispute resolution

10  procedures defined therein.  (Vac. Resp. at 8-10.)  The Ninth Circuit, however, has

11  counseled that the court is not to determine whether the alleged defense succeeds when

12  deciding a motion to set aside a default.  *See TCI Grp.*, 244 F.3d at 700.  Furthermore,

13  Fenix alleges in its proposed answer that the Trust Funds' allegations are factually

14  inaccurate.  (Prop. Ans. at 5.)  Indeed, as the court has observed through its review of the

15  record, although the Trust Funds' complaint refers only to Local 302, the Trust Funds

16  appear to have also included contributions owed by Fenix for its employees who are

17  members of Local 612 in its calculations of damages owed.  (*See generally* Compl.; *see*

18  *also* Kepner Decl., Ex. C (August 2021-May 2022 remittance reports, including entries

19  apparently relating to payment of dues to Local 612).)  The court concludes, therefore,

20  that Fenix may have a meritorious defense to the Trust Funds' claims and that, as a result,

21  this factor favors vacating the default.

22

1    **C.     Prejudice**

2        To be prejudicial, the setting aside of an entry of default must result in greater

3    harm than simply delaying resolution of the case.  *TCI Grp.*, 244 F.3d at 701.  Rather,

4    "the delay must result in tangible harm such as loss of evidence, increased difficulties of

5    discovery, or greater opportunity for fraud or collusion."  *Id.* (quoting *Thompson v. Am.*

6    *Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996)).  Merely "being forced to litigate

7    on the merits" is not considered prejudice.  *Id.*

8        The Trust Funds argue that they have already suffered prejudice because the

9    Health Trust has had to provide medical coverage to Fenix's employees even though it

10   has not received the contributions required to pay for that coverage.  (Vac. Resp. at 7

11   (citing 10/24/22 Dwarzski Decl. ¶¶ 2-4).)  They further contend that the longer they are

12   unable to collect the unpaid contributions, the more likely their "claims will be hindered"

13   because Fenix's delinquency continues to grow.  (*Id.*)  In support of their contention that

14   they have had to provide medical coverage without Fenix's contributions, they rely on a

15   May 2022 email from Local 612's business representative inquiring about Fenix's

16   payments (10/24/22 Dwarzski Decl. ¶ 2, Ex. A) and a "printout tracking hours and

17   advanced health contributions based on employee paystubs" (*id.* ¶ 4, Ex. B).  This

18   lawsuit, however, involves delinquent contributions owed for employees belonging to

19   Local 302—not Local 612—and the "printout" does not identify whether the

20   contributions were for Local 302 or Local 612 members.  (*See id.*, Exs. A & B; Compl.

21   ¶ 6.)  Furthermore, the Trust Funds do not assert that they will suffer harm if the default

22   is set aside beyond a delay in the resolution of the case:  they do not point to risks of loss

1    of evidence, difficulties in discovery, or fraud that would result from being required to

2    litigate this matter on the merits.  *See TCI Grp.*, 244 F.3d at 701; (*see generally* Resp.).

3    Because the Trust Funds have not shown that they will suffer prejudice if they are

4    required to litigate this matter, the court concludes that this factor also favors vacating the

5    entry of default.

6    **D.    Balancing the Factors**

7          Having found that each of the three "good cause" factors favors vacating the entry

8    of default against Fenix, the court concludes that "extreme circumstances" justifying the

9    "drastic step" of judgment of default do not exist here, *see Signed Pers. Check No. 730 of*

10   *Mesle*, 615 F.3d at 1091, and therefore GRANTS Fenix's motion to vacate the entry of

11   default.  Because entry of default is a prerequisite to entry of default judgment, *see* Fed.

12   R. Civ. P. 55, the court also DENIES the Trust Funds' motion for default judgment.

13   Finally, the court GRANTS Fenix's motion for leave to file an answer as unopposed.[5]

14                          **IV.    CONCLUSION**

15         For the foregoing reasons, the court ORDERS as follows:

16         1.    Fenix's motion to vacate the entry of default (Dkt. # 12) is GRANTED;

17         2.    The Trust Funds' motion for default judgment (Dkt. # 9) is DENIED;

18         3.    Fenix's motion for leave to file its answer to the Trust Funds' complaint

19   (Dkt. # 14) is GRANTED; and

20

21
_____

22         [5] "Except for motions for summary judgment, if a party fails to file papers in opposition
     to a motion, such failure may be considered by the court as an admission that the motion has
     merit."  Local Rules W.D. Wash. LCR 7(b)(2).

1      4.     Fenix shall file its answer to the Trust Funds' complaint (Dkt. # 14-1) on

2  the docket by no later than **November 23, 2022**.

3      Dated this 9th day of November, 2022.

4

5

6  _____
   JAMES L. ROBART
7  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 13